IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHAD B. DICKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:08-cv-01102-ARH |
| v. | ) | |
| | ) | Magistrate Judge Francis X. Caiazza |
| SCI-GREENSBURG; SGT. NELSON; | ) | |
| C.O. PETERSON; and | ) | |
| SUPERINTENDENT WAKEFIELD | ) | |
| | ) | |
| Defendants. | ) | Re ECF No. 28 |

## MEMORANDUM OPINION AND ORDER

Chad B. Dickson, ("Plaintiff"), is currently serving sentences in the Department of Corrections at SCI-Retreat. Plaintiff was incarcerated at SCI-Greensburg during the events that give rise to this civil rights lawsuit. Plaintiff has filed a civil rights complaint against four Defendants, all but one of whom, i.e., SCI-Greensburg, are employed by the Department of Corrections ("DOC") and were employed at SCI-Greensburg. All Defendants are represented by the Pennsylvania Attorney General's office. The Defendants have filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

Plaintiff's pro se complaint essentially alleges one incident that gives rise to this case. Plaintiff alleges that on August 2, 2006, he was assaulted by inmate Casey Pelton in the Restrictive Housing Unit (RHU) yard at SCI-Greensburg. ECF No. 27 at 2 to 3.[1] While in the RHU, inmates exercise in individual cages outside. Plaintiff asserts that Defendant Sgt. Nelson ordered Defendant Corrections Officer ("CO") Peterson to open the cages simultaneously and send the inmates up to return to their cells. Plaintiff claims that himself, Pelton, and three other inmates were ordered out of their cages and were standing on the walk with only CO Peterson

---

[1] The second amended complaint (ECF No. 27) is the operative complaint.

present. Plaintiff claims that Pelton walked past the CO, then slipped out of his handcuffs and kicked and struck Plaintiff with his fists and the handcuffs in the face and head until Defendants Nelson and Peterson among others helped pull Pelton off of him. In the original complaint, Plaintiff made it seem like the Defendants simply failed to protect Plaintiff from another unanticipated inmate assault. After the Defendants had filed a motion to dismiss, which essentially showed that such a scenario failed to state a claim of deliberate indifference to Plaintiff's safety, Plaintiff filed the second amended complaint wherein he added allegations that made it appear that the assault was pre-arranged among the defendants and inmate Pelton. See, e.g., ECF No. 27 at 3 ("Information from the other inmates was provided to Plaintiff that, the assault was pre arranged as they over heard conversation from Pelton and Pelton[']s cellmate and Sgt. Nelson. . . . . Sgt. Nelson was fully aware of the threats [allegedly made by Pelton toward Plaintiff] and allowed and assisted Pelton to attack Plaintiff.")(capitalization changed). Plaintiff states that he sustained cuts to his head and knees, a bruised knee and side rib area, and two lumps on his head.

Plaintiff has also named SCI-Greensburg and Superintendent Wakefield as Defendants. Superintendent Wakefield was not present during the assault on the Plaintiff. Plaintiff does, in conclusory fashion, allege that Defendant Wakefield failed to train and properly supervise the other Defendants. ECF No. 27 at 3.

Plaintiff brings suit based on the foregoing under 42 U.S.C. § 1983, claiming his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment rights were violated.

**Standard of Review and the PLRA**

As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), a complaint may be properly dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570 (rejecting the traditional "no set of facts" 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Under this standard, the court must, as a general rule, accept as true all factual allegations of the Complaint and all reasonable inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985).

The question to be resolved is: whether, taking the factual allegations of the complaint, and taking all reasonable inferences to be drawn from them, are the "factual allegations ... enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]" Twombly, 550 U.S. at 555. Or put another way, a complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

Furthermore, because Plaintiff was, at the time of the filing of this civil action, a prisoner and because he named governmental entities or employees thereof as defendants, the screening provisions of the Prisoner Litigation Reform Act ("PLRA") found at 28 U.S.C. § 1915A apply herein. In addition, because he complains about "prison conditions," the screening provisions of 42 U.S.C. § 1997e apply, as do the screening provisions of 28 U.S.C. § 1915(e), given that he was granted *in forma pauperis* status to pursue this suit. The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d

1122, 1126 n.6 (9th Cir. 2000). Hence, if there is a ground for dismissal, which is not relied upon by a defendant in a motion to dismiss, the court may nonetheless *sua sponte* rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez; Dare v. U.S., CIV .A.06-115E, 2007 WL 1811198, at *4 (W.D.Pa. June 21, 2007), *aff'd*, 264 Fed.Appx. 183 (3d Cir. 2008).

Lastly, because Plaintiff is pro se, courts accord an even more liberal reading of the complaint, employing less stringent standards when considering pro se pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519 (1972).

All parties have consented to the plenary exercise of jurisdiction by the undersigned. ECF Nos. 4 & 24. Due to the untimely passing of Chief Magistrate Judge Hay, the case was reassigned to me.

**Discussion**

Plaintiff's Complaint seeks to assert liability against Defendants under 42 U.S.C. § 1983 for violating his Eighth Amendment rights. In order to

> make out a claim under Section 1983, a plaintiff must demonstrate that the conduct of which he is complaining has been committed under color of state or territorial law and that it operated to deny him a right or rights secured by the Constitution and laws of the United States. The plaintiff must also establish that it was the acts of the defendant which caused the constitutional deprivation.

Mosley v. Yaletsko, 275 F.Supp.2d 608, 613 (E.D.Pa. 2003)(citations omitted).

**1) Eleventh Amendment Immunity**

Defendants assert that SCI Greensburg is entitled to Eleventh Amendment immunity because SCI-Greensburg is really the Pennsylvania Department of Corrections. This Court agrees and so SCI-Greensburg must be dismissed as a party defendant.

4

First, we find that SCI-Greensburg has no independent capacity to be sued and on that basis alone must be dismissed as a party defendant. See Fullman v. Pennsylvania Dept. of Corrections, Civil Action No. 4:07CV-000079, 2007 WL 257617, at *3 (M.D.Pa. Jan. 25, 2007)("Even more so, SCI-Smithfield is not even a state entity. It is simply a building.").

Even if we liberally construed the naming of SCI-Greensburg to be Plaintiff's attempt to sue the DOC, such would be unavailing because the DOC is entitled to Eleventh Amendment immunity from suit in federal court and, as such, the DOC and/or SCI-Greensburg are dismissed as party defendants based on such immunity. See Kentucky v. Graham, 473 U.S. 159 (1985). See Dennison v. Pa. Dep't of Corr., 268 Fed.Supp.2d 387, 396 (M.D.Pa. 2003).

To the extent that Plaintiff is suing the real person defendants in their official capacities for monetary damages, they are immune from suit under the Eleventh Amendment as well. See Kentucky v. Graham, 473 U.S. at 165-67 (holding that claims for damages against a state officer acting in his official capacity are barred by the Eleventh Amendment).

The fact that neither Wakefield, Nelson, nor Peterson are subject to suit in their official capacities does not end the analysis. "Damage awards against individual defendants in federal courts 'are a permissible remedy in some circumstances notwithstanding the fact that they hold public office.'" Hafer v. Melo, 502 U.S. 21, 30 (1991) (quoting Scheuer v. Rhodes, 416 U.S. 232, 238 (1974)). "State officials sued in their individual capacities are 'persons' within the meaning of § 1983," Id. at 31, and thus are not immune from personal liability under § 1983 solely by virtue of the "official" nature of their acts. Id.

Under § 1983, every person who, acting under color of state law, "subjects or causes to be subjected" another person to deprivation of a federally secured right is liable for that transgression. This statutory phrase means that liability may be established in two ways. "One

5

can be liable for one's own constitutional tort, that is, for 'subjecting' the plaintiff to the constitutional violation. One can also be liable, under appropriate circumstances, for someone else's constitutional tort-that is, for 'causing' the plaintiff to be subjected to the constitutional violation." Sample v. Diecks, 885 F.2d 1099, 1113 (3d Cir. 1989). The allegations against Nelson and Peterson fall within the first type of liability. By contrast, the allegations against Wakefield are based entirely on his failure to supervise and/or train subordinate officers.

**2) Claims against Supervisor Wakefield**

Defendants argue that Plaintiff fails to state a claim against Defendant Wakefield because the complaint reveals that he lacks any personal involvement in the wrongs. We agree.

In order to succeed under Section 1983, a plaintiff must show evidence that a defendant was personally involved in the deprivation of rights as there is no *respondeat superior* liability permitted under Section 1983. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) ("liability [in a civil rights action] cannot be predicated solely on the operation of respondeat superior."). "A defendant in a [§ 1983] action must have personal involvement in the alleged wrongs." Id. "Personal involvement can be shown through allegations of personal direction or of actual [contemporaneous] knowledge and acquiescence." Id. Accord Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) ("Her amended complaint likewise does not contain even a remote suggestion that Attorney General Fisher had **contemporaneous,** personal knowledge of her transfer and acquiesced in it.") (emphasis added).

Plaintiff's allegations in his complaint against Defendant Wakefield are based solely upon Wakefield's roles in the grievance process and as a supervisor. ECF no. 27 at 3 ("Supt. Wakefield is involved due to the fact that he is in charge of SCI Greensburg at this time. He is to train[,] oversee and supervise the Staff at SCI-Greensburg. Supt. Wakefield failed to do

6

this.")(capitalization changed). Plaintiff asserts that Defendant Wakefield did not properly remedy the situation after the fact in the grievance process. Plaintiff states in one of his responses that Defendants Nelson and Peterson were not disciplined to his knowledge. ECF No. 25, at 3, § 4. Such actions taken or not taken by Defendant Wakefield in the grievance process or after the fact of the assault are insufficient as a matter of law to render Defendant Wakefield liable. For the rule is that "[t]he failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation." Rauso v. Vaughn, No. CIV. A. 96-6977, 2000 WL 873285, at *16 (E.D.Pa., June 26, 2000). See also Overholt v. Unibase Data Entry, Inc., 221 F.3d 1335 (Table), 2000 WL 799760, at *3 (6th Cir. 2000) ("The defendants were not obligated to 'properly' respond to Overholt's grievances because there is no inherent constitutional right to an effective prison grievance procedure. Hence, his allegations that the defendants did not properly respond to his grievances simply do not rise to the level of a constitutional violation.") (citations omitted); Caldwell v. Beard, No. 2:07-CV-727, 2008 WL 2887810, at *4 (W.D.Pa. July 23, 2008) ("Such a premise for liability [i.e., for performing a role in the grievance process] fails as a matter of law."), aff'd, 324 Fed.Appx. 186 (3d Cir. 2009).

Plaintiff's response alleges, at most, that Defendant Wakefield failed to discipline the allegedly responsible actors or take corrective action after Plaintiff was assaulted. However, such actions or inactions which, concededly occurred only **after** the alleged constitutional violations had already occurred, cannot be said to have been the "cause" of Plaintiff's constitutional injuries. Without such causation there can be no liability. See, e.g., Ricker v. Weston, 27 Fed.Appx. 113, 119 (3d Cir. 2002) ("This decision not to discipline the officers does not amount to active involvement in appellees' injuries given that all of the injuries occurred before the decision.").

Plaintiff also alleges that Defendant Wakefield did not properly train or supervise his CO's, and therefore should be liable because his lack of supervision allowed the Plaintiff to be assaulted. ECF No. 27 at 3. Plaintiff asserts in conclusory fashion that information was provided to Defendant Wakefield of the threats, apparently to Plaintiff, and of the problems within the RHU. Id. Calling on our judicial experience and common sense,[2] we find that Plaintiff's factual allegations against Defendant Wakefield fail to nudge his claims across the line to the plausible but constitute merely "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements [which] do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Accordingly, the complaint against Defendant Wakefield must be dismissed for failure to state a claim.

In the alternative, we find, *sua sponte*, pursuant to the PLRA, the complaint is dismissible against Defendant Wakefield based upon his qualified good faith immunity. Doe v. Delie, 257 F.3d 309, 312 (3d Cir. 2001) (noting that after the defendants had filed a motion to dismiss, the "Magistrate Judge found, sua sponte, that defendant Zimmerman was entitled to qualified immunity for her alleged misconduct and recommended dismissal of the complaint against her pursuant to 28 U.S.C. §1915(e)(2)(B)(ii)."). Based upon the factual allegations contained in the second amended complaint against Defendant Wakefield, it would not have been clear to a reasonable official in his shoes that his actions or inactions violated any of Plaintiff's clearly established constitutional rights, especially given the existence of procedures in place that called for two guards to accompany each RHU inmate (as Plaintiff alleges), even if those procedures were not followed herein. See Giles v. Kearney, 571 F.3d 318, 325 (3d Cir.

---

[2] See, e.g., Twillie v. Ohio, 351 Fed.Appx. 596, 598 (3d Cir. 2009)("To determine plausibility, we consider the context of the claims and draw on our judicial experience and common sense.")(citing Iqbal. 129 S.Ct. at 1950).

2009) ("Qualified immunity is a complete immunity from suit, not just a defense to liability, and is considered at the earliest possible stage of proceedings").

### 3) Eighth Amendment

Plaintiff's original complaint asserted an Eighth Amendment claim against Defendants Nelson and Peterson for their failure to protect Plaintiff.[3] However, his second amended complaint, in contrast, alleges an active conspiracy to assault Plaintiff that was joined in by Defendants Nelson and Peterson with the conscious object of the conspiracy to cause injury to

---

[3] Plaintiff also invoked the Fourteenth Amendment. The Court understands Plaintiff's invocation of the Fourteenth Amendment merely to be a shorthand way of saying that he is making a claim of a violation of the Eighth Amendment standards as these are incorporated against the states via the substantive due process provision of the Fourteenth Amendment. This is because technically, the Eighth Amendment applies to the states through the Fourteenth Amendment. See Estelle v. Gamble, 429 U.S. 97, 101-02 (1976). The standards of the Eighth Amendment barring the federal government from inflicting cruel and unusual punishments are the standards applicable to the States through incorporation by the Fourteenth Amendment's due process clause. See Sistrunk v. Lyons, 646 F.2d 64, 66-67 (3d Cir. 1981); Furman v. Georgia, 408 U.S. 238, 422 n. 4 (1972) (Blackmun, J., dissenting) ("the tests for applying these two provisions are fundamentally identical."). In the discussion, the court simply refers to the Eighth Amendment for simplicity's sake. To the extent that Plaintiff seeks to have this court apply the more amorphous "shock the conscience" or similar standard under the Fourteenth Amendment's substantive due process clause as opposed to the Eighth Amendment standards of deliberate indifference, we may not do so. Albright v. Oliver, 510 U.S. 266 (1994) (plurality); Graham v. Connor, 490 U.S. 386, 395 (1989); County of Sacramento v. Lewis, 523 U.S. 833 (1998). To the extent that Plaintiff is attempting to mount a procedural due process claim under the Fourteenth Amendment, the complaint fails to reveal any potential pre tort process that could have been provided to Plaintiff before the assault. See, e.g., Parratt v. Taylor, 451 U.S. 527, 541-43 (1981), *overruled on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-31 (1986); West v. Michigan Dept. of Corrections, No. 07-11081, 2008 WL 4104497, at *5 (E.D.Mich. Sept. 2, 2008)("the '*Parratt* doctrine' prohibits procedural due process claims brought under 42 U.S.C. § 1983 where the state provides the claimant an adequate post-deprivation remedy if (1) the deprivation was unpredictable or 'random'; (2) **predeprivation process was impossible or impracticable**; and (3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty.")(emphasis added). Moreover, Plaintiff had an adequate post deprivation process in the form of the grievance procedure or state law tort suit. Zinermon v. Burch, 494 U.S. 113, 132 (1990)("where the State is truly unable to anticipate and prevent a random deprivation of a liberty interest, postdeprivation remedies might satisfy due process."). See also Austin v. Lehman, 893 F. Supp. 448, 454 (E.D. Pa. 1995) (both inmate grievance procedure and state tort law action constituted adequate post-deprivation remedies). Hence, no procedural due process claim exists here.

Plaintiff. ECF No. 27 at 3 ("Information from the other inmates was provided to Plaintiff that, the assault was pre arranged as they over heard conversation from Pelton and Pelton[']s cellmate and Sgt. Nelson. . . . . CO. Peterson d[e]liberately did not secure the handcuffs on inmate Pelton[,] allowing him to be free of handcuffs in order to assault Plaintiff. . . . Sgt. Nelson was fully aware of the threats [allegedly made by Pelton toward Plaintiff] and allowed and assisted Pelton to attack Plaintiff. . . . Nelson conspired with CO. Peterson to arrange such assault to Plaintiff[.]")(capitalization changed).

We find this sufficient to state a claimed violation of Plaintiff's Eighth Amendment rights. Defendants' argue, in their brief in support of their motion to dismiss, as if Plaintiff's claim contained in the second amended complaint was the same claim as made in the original complaint, i.e., a mere failure to protect claim. Compare ECF No. 22 at 9 to 14 with ECF No. 29 at 8 to 14. See also Brief in Support of Motion to Dismiss 2nd Amended Complaint, ECF No. 29 at 9 ("In an Eighth Amendment failure to protect claim, such as this one. . . ."). The Defendants' arguments contained in their motion to dismiss and brief are not persuasive insofar as relates to Defendants Nelson and Peterson.

Accordingly, the following order is entered:

**AND NOW**, this ___ day of November 2010, for the foregoing reasons, it is hereby **ORDERED** that the Motion to Dismiss filed by the Defendants, ECF No. 28, is hereby **GRANTED in part**, and **DENIED in part.** It is granted as to all claims against all defendants and it is **DENIED** as to the Eighth/Fourteenth Amendment claims against Defendants Nelson and Peterson based upon their alleged conspiracy to injure Plaintiff by permitting Inmate Pelton to assault Plaintiff.

/s Francis X. Caiazza
Francis X. Caiazza
U.S. Magistrate Judge

Dated: November 8, 2010

cc:    Chad B. Dickson
FF-5942
SCI Retreat
660 State Route 11
Hunlock Creek, PA 18621

Counsel of Record via ECF