IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHAD B. DICKSON,              )
                                      )
           Plaintiff,        )
                                        )   Case No. 2:08-cv-01102
       v.                       )
                                        )   Magistrate Judge Maureen P. Kelly
SCI-GREENSBURG; SGT. NELSON;   )
OFFICER PETERSON; and        )   [Re: ECF Nos. 55, 74]
SUPERINTENDENT WAKEFIELD,   )
                                        )
           Defendants.     )

## OPINION

**KELLY, Magistrate Judge**

Chad B. Dickson, ("Dickson" or "Plaintiff"), an inmate at the State Correctional Institution at Retreat ("SCI-Retreat), has brought this civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his rights under the Eighth and Fourteenth Amendments to the Constitution while he was incarcerated at the State Correctional Institution at Greensburg ("SCI-Greensburg").  Specifically, Plaintiff alleges that on August 2, 2006, he was assaulted by inmate Casey Pelton ("Pelton") in the Restrictive Housing Unit ("RHU") exercise yard at SCI-Greensburg and that Defendants Sergeant Nelson ("Nelson") and Officer Peterson ("Peterson") (collectively, "Defendants"),[1] not only failed to protect him but that they conspired with Pelton to have Plaintiff assaulted.  [ECF No. 27, pp. 2-3].

Presently before the Court are Defendants' Motion for Summary Judgment [ECF No. 53], and Plaintiff's Renewed Motion for Summary Judgment [ECF No. 74].  For the reasons that follow, Defendants' motion will be granted and Plaintiff's motion will be denied.

---

[1] Although SCI Greensburg and David Wakefield were also named as Defendants, they have been dismissed from the case pursuant to a Motion to Dismiss filed by Defendants on April 19, 2010.  See [ECF Nos. 28, 34].

# I.    FACTUAL AND PROCEDURAL BACKGROUND

According to the record, Plaintiff was in the RHU exercise yard on August 2, 2006, with six other inmates, including Pelton.  [ECF 55-2, pp. 11-12].  The yard is two flights of steps down from the RHU and contains six or seven exercise cages that the inmates are locked into either individually or in tandem.  [ECF No. 55-2, pp. 5-6].  Two corrections officers are normally in the RHU yard: one sits at the top of the steps and the other monitors the cages down below.  [ECF No. 55-2, p. 6].   On August 2, 2006, it appears that Nelson was at the top of the steps and Peterson was down by the cages.  [ECF No. 55-2, p. 13].  Plaintiff asserts that at some point, Nelson ordered Peterson to open the cages simultaneously and send the inmates up so that they could be returned to their cells. [ECF. No. 27, p. 2; ECF No. 71, p. 2].  Plaintiff, Pelton, and the other inmates were then ordered out of their cage and handcuffed by Peterson.  [ECF No.  71, p. 2].  It is undisputed that while they were standing on the walk in front of the cages with only Peterson present, Pelton slipped out of his handcuffs and assaulted Plaintiff, kicking him and striking him about his face and head with his fists and the handcuffs, until Nelson and Peterson, among others, intervened.  [ECF No. 27, p. 2; ECF No. 71, p. 2].

Plaintiff submitted a Section 1983 complaint on August 7, 2008 [ECF No. 3], which he amended on January 30, 2009 [ECF No. 13], alleging that his rights were violated by Defendants because they failed to protect him from the assault.  In particular, Plaintiff alleged that Defendants' failure to protect him stemmed from their failure to follow Department of Corrections' policies and procedures for escorting prisoners.  Defendants filed a Motion to Dismiss the Amended Complaint on June 6, 2009, arguing, *inter alia*, that by failing to plead any facts from which a fact-finder could infer that Defendants were aware of any danger to Plaintiff or that any of the Defendants subjectively made a decision to disregard a known risk of harm to

him, Plaintiff had merely set forth a claim of negligence in the supervision of inmates and not a constitutional violation. [2]  [ECF Nos. 21, 22].   Plaintiff subsequently requested and was granted leave to amend his complaint a second time.  [ECF Nos. 25, 26].  Plaintiff filed a Second Amended Complaint ("the Complaint") on April 16, 2010,  alleging for the first time that the assault was pre-arranged by Defendants and inmate Pelton.  [ECF No. 27, p. 3].    Defendants filed a Motion to Dismiss Second Amended Complaint on April 19, 2010, which was denied as to Plaintiff's Eighth and Fourteenth Amendment claims against Nelson and Peterson and granted in all other respects.  [ECF Nos. 28, 29, 34].  Following the close of discovery, the instant motions for summary judgment were filed and are now ripe for review.

## II.      STANDARD OF REVIEW

Summary judgment is warranted where the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the initial burden of demonstrating that a fact cannot be genuinely disputed by citing to record evidence, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations ... admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   The movant can also support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact."  Fed. R. Civ. P. 56(c)(1)(B); *accord* Fed. R. Civ. P. 56(c)(2).  See Burgos-Cintron v. Nyekan, 2011 WL 4361601 at *5 (D.N.J. Sept. 19, 2011).

---

[2] In order to make out a claim under Section 1983, "a plaintiff must demonstrate that the conduct of which he is complaining has been committed under color of state or territorial law and that it operated to deny him a right or rights secured by the Constitution and laws of the United States. The plaintiff must also establish that it was the acts of the defendant which caused the constitutional deprivation."   Mosley v. Yaletsko, 275 F. Supp. 2d 608, 613 (E.D. Pa. 2003) (citations omitted).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323; <u>Maidenbaum v. Bally's Park Place, Inc.</u>, 870 F. Supp. 1254, 1258 (D.N.J. 1994), *aff'd*, 67 F.3d 291 (3d Cir. 1995). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. <u>Andersen v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986). <u>See</u> <u>U.S. v. Corry Comm'ns</u>, 2011 WL 4572012 at *2 (W.D. Pa. Sept. 30, 2011) (when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial). Moreover, the mere existence of some evidence favoring the non-moving party will not defeat the motion. There must be enough evidence with respect to a particular issue to enable a reasonable jury to find in favor of the non-moving party. <u>Anderson v. Liberty Lobby</u>, 477 U.S. at 248. <u>See</u> <u>McGreevy v. Stroup</u>, 413 F.3d 359, 363-64 (3d Cir. 2005). In evaluating the evidence at the summary judgment stage, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. <u>Matreale v. N.J. Dep't of Military & Veterans Affairs</u>, 487 F.3d 150, 152 (3d Cir. 2007).

## III. DISCUSSION

The only claims remaining before the Court are Plaintiff's Eighth and Fourteenth Amendment claims against Nelson and Peterson for allegedly conspiring to have Plaintiff assaulted.[3] Defendants do not dispute that the assault occurred. Nor do they dispute that they

---

[3] Plaintiff's Fourteenth Amendment claim is properly evaluated under the same standard as his Eighth Amendment claim as the Eighth Amendment standard barring the federal government from inflicting cruel and unusual

(footnote continued . . . . )

would be liable to Plaintiff for violating his Constitutional rights had they conspired to have him assaulted. Rather, Defendants contend that they are entitled to summary judgment because Plaintiff is unable to produce any admissible evidence from which a fact-finder could conclude that Defendants, in fact, engaged in a conspiracy. Plaintiff counters, arguing that he is entitled to summary judgment because Defendants have failed to demonstrate that they did *not* conspire to have him assaulted, and has submitted a series of exhibits that purportedly show the existence of a conspiracy. See [ECF Nos. 74-1 to 74-25].

"In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right . . . ." Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 254 (3d Cir.1999), *superseded by statute on other grounds as stated in* P.P. ex rel. Michael P. v. West Chester Area Sch. Dist., 585 F.3d 727, 730 (3d Cir. 2009). Establishing the existence of a conspiracy requires concerted action and the existence of an agreement. Watson v. Sec'y Pa. Dept. of Corr., 2011 WL 2678920 at *5-6 (3d Cir. July 08, 2011), *citing* Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 533 (10th Cir.1998). Because "'the linchpin for conspiracy is agreement' . . . concerted action, without more, cannot suffice to state a conspiracy claim." Id., *quoting* Bailey v. Bd. of Cnty. Comm'rs, 956 F.2d 1112, 1122 (11th Cir. 1992). See Startzell v. City of Phila., 533 F.3d 183 (3d Cir. 2008), *quoting* Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970) ("[t]o constitute a conspiracy, there must be a 'meeting of the minds'").

Here, the record is devoid of any admissible evidence to support a finding that Nelson and Peterson had an understanding or an agreement to have Plaintiff assaulted. The evidence

---

punishments is incorporated against the states through the Fourteenth Amendment's substantive due process clause. See Estelle v. Gamble, 429 U.S. 97, 101-02 (1976). See Sistrunk v. Lyons, 646 F.2d 64, 66-67 (3d Cir. 1981); Furman v. Ga., 408 U.S. 238, 422 n. 4 (1972) (Blackmun, J., dissenting) ("the tests for applying these two provisions are fundamentally identical.").

proffered by Plaintiff demonstrates only that the assault occurred [ECF Nos. 74-1, 74-7, 74-8, 74-9 to 74-18, 74-21]; that various corrections officers who were assigned to the RHU on the day of the assault were reprimanded for failing to follow proper procedures for escorting prisoners [ECF Nos. 74-2 to 74-6]; and that Plaintiff submitted a grievance and an appeal, dated September 18, 2006, in which he states that the incident would not have occurred if procedures had been followed [ECF Nos. 74-19, 74-20].  Although Plaintiff has also submitted Nelson's and Peterson's answers to his Requests for Admissions and their responses to his Interrogatories and Requests for Production of Documents, nothing contained therein remotely suggests that Defendants entered into an agreement to have Plaintiff assaulted.  See [ECF Nos. 74-22 to 74-25].

Further, although Plaintiff testified at his deposition that he received information from five individuals suggesting that Defendants had conspired to have him assaulted, Defendants have objected to Plaintiff's testimony in this regard as being vague, speculative and inadmissible hearsay.  Indeed, the record shows that Plaintiff named Corrections Officer ("CO") Guizze; CO Williams; Inmate Hector Vasquez; Inmate Hutchinson; and Inmate Samson as individuals who provided him with information that Defendants had engaged in a conspiracy to have him assaulted.  According to Plaintiff's testimony, CO Guizze came to his cell at some point after the assault and told Plaintiff that "they arranged this."  [ECF No. 55-2, pp. 14-15, 18, 21].  Defendants have objected to this evidence as being vague and amounting to nothing more than Guizze's speculation about the causes of the assault.  Indeed, Plaintiff does not assert that he knows how Guizze allegedly arrived at the conclusion that they arranged the assault nor does he offer any evidence that the term "they" actually refers to Defendants.  Moreover, as Defendants

correctly argue, absent Guizze's appearance at trial, his alleged statements are inadmissible as hearsay. See Fed. R. Evid. 801-804.

With respect to CO Williams, Plaintiff testified that several days after the assault Williams told him that it was "clearly evident" that the assault was "arranged." [ECF No. 55-2, pp. 14-16, 21]. Williams' statement, however, does not indicate that it was Defendants that arranged the assault nor provide evidence that they entered into an agreement. As such, Defendants have also objected to this evidence as being vague and speculative and because it would be inadmissible as hearsay. See Fed. R. Evid. 801-804.

As well, Plaintiff has asserted that on the day after the assault an inmate named "Hutchinson" told him that the assault was planned and that Hutchinson knew from Pelton that the assault was going to happen two weeks beforehand. [ECF No. 55-2, pp. 21-25]. Although Plaintiff claims that Hutchinson prepared two affidavits setting forth these facts, Plaintiff has not provided them to the Court and apparently no longer has possession of them. [ECF No. 55-2, pp. 21-24]. Moreover, Plaintiff acknowledged at his deposition that he could not recall the source of Hutchinson's information regarding the existence of a conspiracy. [ECF No. 55-2, pp. 24, 25]. More importantly, however, Plaintiff testified that does not know Hutchinson's first name and does not know his current whereabouts. [ECF No. 55-2, p. 21]. His unavailability to testify at trial clearly renders Plaintiff's testimony in this regard hearsay and is inadmissible. See Fed. R. Evid. 801-804.

Plaintiff also testified that inmate Hector Vasquez told him that Peterson had conveyed to Vasquez that he "regretted" what he did. [ECF No. 55-2, p. 27]. Defendants object to this evidence as offering no evidentiary value in light of Plaintiff's acknowledgement that Peterson's alleged statement to Vasquez could just easily be interpreted as regretting that he did not put the

handcuffs on Pelton properly as regretting that he planned the assault with Nelson and Pelton. [ECF No. 55-2, p. 27].

Finally, Plaintiff claims that an inmate named "Samson" told him that the assault was arranged. [ECF No. 55-2, p. 29]. As argued by Defendants, however, Plaintiff does not know the source of Samson's purported knowledge, and absent his testimony at trial, Sampson's alleged statement would be inadmissible. See Fed. R. Evid. 801-804.

Revised Federal Rule of Civil Procedure 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The Advisory Committee Notes further counsels that "[t]he objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." See AtPac, Inc. v. Aptitude Solutions, Inc., 787 F. Supp. 2d 1108, 1111 (E.D. Cal. 2011) ("[e]ven if the non-moving party's evidence is presented in a form that is currently inadmissible, such evidence may be evaluated on a motion for summary judgment so long as the moving party's objections could be cured at trial"); In re Flonase Antitrust Litigation, --- F. Supp. 2d ---, 2011 WL 4464823 at *4 (E.D. Pa. Sept. 26, 2011), quoting Lexington Ins. Co. v. W. Pa. Hosp., 423 F.3d 318, 329 n.6 (3d Cir. 2005) ("[t]he Supreme Court and Third Circuit, though, have 'not precluded reliance on unauthenticated documents to oppose a motion for summary judgment, so long as they are ultimately reduc[ible] to admissible evidence'").

Because Defendants have objected to Plaintiff's purported evidence as inadmissible, it is therefore incumbent upon Plaintiff to show either that the statements allegedly made by CO Guizze, CO Williams, and inmates Vasquez, Hutchinson, and Samson are admissible as

currently presented or that Defendants' objections can be cured at trial. It is clear that the evidence at issue is inadmissible as presented, i.e., through Plaintiff's testimony. Thus, Plaintiff is required to show that he can overcome Defendants' objections at trial. Plaintiff, however, has not specifically addressed Defendants' objections in his briefs or other submissions but merely refers generally to unnamed "witnesses" who would testify to "facts." [ECF No. 60, p. 2; ECF No. 61, pp. 2, 4; ECF No. 61-1, pp. 2, 4; ECF No. 64, p. 5]. Indeed, Plaintiff has failed to discuss the availability of the witnesses, their willingness to testify, or suggested how he would overcome the speculative nature of their various statements. Nor has he addressed the apparent unavailability of Hutchinson and Sampson. As such, Plaintiff has failed to meet his burden.

## IV.    CONCLUSION

Because it is Plaintiff's burden to prove that a conspiracy existed, and not Defendants' burden to prove that one did not, Plaintiff's failure to proffer admissible evidence establishing that Defendants agreed to have him assaulted or explain how the inadmissibility will be cured at trial is fatal to his claims. For these reasons, Defendants' Motion for Summary Judgment [ECF No. 53] is GRANTED, and Plaintiff's Renewed Motion for Summary Judgment [ECF No. 74] is DENIED.

An appropriate order follows.

/s Maureen P. Kelly
U.S. Magistrate Judge

Dated:  8 November, 2011

cc:    Chad B. Dickson
       FF-5942
       SCI Retreat
       660 State Route 11
       Hunlock Creek, PA 18621

       Counsel of Record via ECF